# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BASHIR RIVERA,<br><br>               Plaintiff,<br><br>    v.<br><br>COMMUNICATION SYSTEMS, INC.,<br>ROGER H.D. LACEY, STEVEN C.<br>WEBSTER, RANDALL D. SAMPSON,<br>RICHARD A. PRIMUTH, and MICHAEL<br>ZAPATA,<br><br>             Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF<br>FEDERAL SECURITIES LAWS** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## BACKGROUND

1.      This action concerns a proposed transaction ("Proposed Transaction") announced on March 2, 2021 pursuant to which Communication Systems, Inc. ("Communication Systems" or the "Company") will merge with Pineapple Energy, LLC ("Pineapple").

2.      On March 1, 2021, Communication Systems' Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"). Under the Merger Agreement, Communication Systems will combine with Pineapple Energy, which will be publicly traded on NASDAQ under the symbol "PEGY" (the "Proposed Transaction"). Pursuant to the terms of the Merger Agreement, Communications System shareholders will own approximately 38.4% of the combined company (the "Merger Consideration").

3.      On November 12, 2021, in order to convince Communication Systems' shareholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC").

4.      The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

5.      In addition, a special meeting of Communication Systems' stockholders will be held to vote on the Proposed Transaction (the "Stockholder Vote").  It is therefore imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Stockholder Vote so Communication Systems' stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.      This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue

will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's shares trade on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9.      Plaintiff is, and has been continuously throughout all times relevant hereto, a Communication Systems shareholder.

10.     Defendant Communication Systems is a Delaware corporation and a party to the Merger Agreement. Communication Systems shares are traded on the NASDAQ under the ticker symbol "JCS."

11.     Defendant Roger H.D. Lacey is Chairman of the Board and a director of the Company.

12.     Defendant Steven C. Webster is a director of the Company.

13.     Defendant Randall D. Sampson is a director of the Company.

14.     Defendant Richard A. Primuth is a director of the Company.

15.     Defendant Michael Zapata is a director of the Company.

## FACTS

16.     Communication Systems develops and sells Intelligent Edge solutions that provide connectivity and power through Power over Ethernet ("PoE") products and actionable intelligence to end devices in an Internet of Things ("IoT") ecosystem through embedded and cloud-based management software and provides SD-WAN and other technology solutions that address prevalent IT challenges, including network resiliency, security products and services, network

virtualization, and cloud migrations, IT managed services, wired and wireless network design and implementation, and converged infrastructure configuration, deployment, and management.

17.     Pineapple is a Delaware limited liability company formed on December 1, 2020. Pineapple was founded to acquire and grow leading local and regional solar, storage, and energy services companies nationwide. Pineapple's vision is to power the energy transition through grass-roots growth of solar electricity paired with battery storage on consumers' homes.

18.     On March 2, 2021, Communication Systems' Board caused the Company to enter into the Merger Agreement.

19.     According to the press release announcing the Proposed Transaction:

Minnetonka, MN – March 2, 2021 -- Communications Systems, Inc. (NASDAQ: JCS) ("CSI" or the "Company"), an IoT intelligent edge products and services company, today announced that it entered into a definitive merger agreement with privately held Pineapple Energy, LLC ("Pineapple"), a growing U.S. operator and consolidator of residential solar, battery storage, and grid services solutions. Upon closing, CSI will commence doing business as Pineapple Energy, with a business model focused on the rapidly growing home solar industry. The Company expects shares of the combined company to continue to trade on the Nasdaq Capital Market under the new ticker symbol "PEGY." The definitive merger agreement and transaction have been approved by CSI's Board of Directors and are subject to approval by CSI's shareholders. The transaction is expected to close in the second quarter of 2021.

***

**Cash Dividends; Contingent Value Rights; Continuing Ownership for CSI's Shareholders**
In conjunction with the merger, CSI intends to divest substantially all its current operating and non-operating assets, including its Electronics & Software business, its Services & Support business, real estate holdings, and cash, cash equivalents, and investments. CSI is in discussions and negotiations with potential acquirers of its business segments and real estate holdings. CSI expects the sale proceeds from any pre-merger divestitures to be distributed in the form of a cash dividend to existing CSI shareholders prior to the effective date of the merger. In addition to any proceeds from pre-merger divestitures, CSI expects to distribute to the pre-merger shareholders a cash dividend of at least $1.00 per share prior to the closing of the merger. The Company also intends to make additional cash dividends from cash, cash equivalents, and investments and proceeds from the sale of legacy CSI assets and businesses sold after the merger through the CVRs, as described below.

4

Under terms of the merger agreement, each CSI shareholder as of the merger record date, will receive Contingent Value Rights ("CVRs") that reflect the right to receive that shareholder's percentage of the net proceeds from the sale of legacy CSI businesses and assets, after the closing. The Company currently expects that these CVRs will be nontransferable. As of September 30, 2020, CSI's net book value was $47.2 million, it had cash, cash equivalents, and investments of $21.0 million and had working capital of $28.5 million.

Additionally, current CSI shareholders will retain shares in the combined company, initially holding approximately 37% of total shares outstanding. This ownership is expected to decrease over time due to earnouts to Pineapple shareholders and capital to be raised through potential future equity offerings, as described below.

***

**Advisors**

Northland Capital Markets serves as financial advisor to CSI in connection with the transaction and JMP Securities serves at financial advisor to Pineapple Energy. Ballad Spahr LLP is acting as legal counsel to CSI and Faegre Drinker Biddle & Reath LLP is acting as legal counsel to Pineapple Energy.

20.     The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

21.     It is therefore imperative that the Company's shareholders receive the material information that Defendants have omitted from the Registration Statement so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

22.     Section 6.2 of the Merger Agreement has a "no solicitation" clause that prevents Communication Systems from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

No Solicitation

(a)     No Solicitation or Negotiation. Except as set forth in this Section 7.1, until the Effective Time, each of the Company, the Parent and their respective Subsidiaries shall not, and each of the Company and the Parent shall cause their respective directors, officers, members, employees, agents, attorneys, consultants, contractors, accountants, financial advisors and other

authorized representatives ("Representatives") not to, directly or indirectly:

(i)     solicit, seek or initiate or knowingly take any action to facilitate or encourage any offers, inquiries or the making of any proposal or offer that constitutes, or could reasonably be expected to lead to, any Acquisition Proposal, or engage, participate in, or knowingly facilitate, any discussions or negotiations regarding, or furnish any nonpublic information to any person in connection with any inquiries, proposals or offers that constitute or could reasonably be expected to lead to, an Acquisition Proposal;

(ii)    solicit, initiate, encourage, enter into, continue or otherwise participate or engage in any discussions or negotiations regarding any Acquisition Proposal, or furnish to any person any non-public information or afford any person other than the Parent or the Company, as applicable, access to such party's property, books or records (except pursuant to a request by a Governmental Authority) in connection with any offers, inquiries or the making of any proposal or offer that constitutes, or could reasonably be expected to lead to, any Acquisition Proposal;

(iii)   take any action to make the provisions of any takeover statute inapplicable to any transactions contemplated by an Acquisition Proposal; or

(iv)    resolve or publicly propose to do any of the foregoing described in clauses (i) through (iii).

23.     In addition, Section 9.3 of the Merger Agreement requires Communication Systems to pay up to a $2,500,000 "termination fee" in the event this agreement is terminated by Communication Systems and improperly constrains the Company from obtaining a superior offer. Such a termination fee is excessive and unduly restrictive to Communication Systems' ability to consider other offers.

24.     Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

25.     The Registration Statement omits material information concerning Communication Systems' and Pineapple's financial projections.

26.     With respect to Communication Systems' financial projections, the Registration Statement fails to disclose all line items underlying (i) Sales, (ii) Gross Profit, (iii) Operating

6

income (loss), (iv) Adjusted EBITDA, and (v) Unlevered Free Cash Flow.

27.     With respect to Pineapple's financial projections, the Registration Statement fails to disclose all line items underlying (i) Revenue; (ii) Gross Profit, (iii) Operating income, (iv) EBITDA, and (v) Unlevered Free Cash Flow.

28.     The disclosure of projected financial information is material information necessary for stockholders to gain an understanding of the basis for any projections as to the future financial performance of the combined company.  In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the companies' financial advisors rendered in support of any fairness opinion.

29.     Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisor, Craig-Hallum Capital Group LLC ("Craig-Hallum") connection with the Proposed Transaction.

30.     With respect Craig-Hallum's *Comparable Public Company Analysis – CSI Stand-Alone*, the Registration Statement fails to disclose the multiples and metrics for the selected companies observed by Craig-Hallum in its analysis and the representative ranges used to calculate financial multiples.

31.     With respect Craig-Hallum's *Precedent Transactions Analysis – CSI Stand-Alone*, the Registration Statement fails to disclose the multiples and metrics for the transactions observed by Craig-Hallum in its analysis and the representative ranges used to calculate financial multiples.

32.     With respect to Craig-Hallum's *Discounted Cash Flow Analysis – CSI Stand-Alone,* the Registration Statement fails to disclose (i) the after-tax unlevered free cash flows for Communication Systems and all underlying line items of CSI for fiscal years 2021 to 2025; (ii) the terminal/continuing value of the Company; (iii) the basis for applying an assumed tax rate 26.0

% ; (iv) the individual inputs and assumptions underlying the terminal LTM revenue multiples of 1.5x to 2.5x; and (v) the individual inputs and assumptions underlying the terminal LTM adjusted EBITDA multiples of 11.0x to 13.0x.

33.     With respect Craig-Hallum's *Comparable Public Company Analysis –Pineapple Stand-Alone*, the Registration Statement fails to disclose the multiples and metrics for the selected companies observed by Craig-Hallumin in its analysis and the representative ranges used to calculate financial multiples.

34.     With respect Craig-Hallum's *Precedent Transactions Analysis – Pineapple Stand-Alone*, the Registration Statement fails to disclose the multiples and metrics for the transactions observed by Craig-Hallum in its analysis and the representative ranges used to calculate financial multiples.

35.     With respect to Craig-Hallum's *Discounted Cash Flow Analysis –Pineapple Stand-Alone,* the Registration Statement fails to disclose (i) the after-tax unlevered free cash flows for Pineapple and all underlying line items of Pineapple for fiscal years 2021 to 2025; (ii) the terminal/continuing value of Pineapple; (iii) the basis for applying an  assumed tax rate 26% ; (iv) the individual inputs and assumptions underlying the terminal LTM revenue multiples of 4.25x to 5.25x; and (v) the individual inputs and assumptions underlying the discount rates of 18.0% to 22.0%.

36.     Third, the Registration Statement fails to disclose sufficient information regarding communications about post-transaction employment and directorship during the negotiation of the Proposed Transaction.

37.     The omission of the above-referenced material information renders the Registration Statement false and misleading.

38.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

39.    nonetheless failed to obtain and disclose such information to stockholders as required.

40.    The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Registration Statement.  Defendants were also negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.

41.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

**CLAIMS FOR RELIEF**

**COUNT I**

**(AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that Registration Statement communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-

9.

44.     Defendants issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

45.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders as required.

46.     The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Registration Statement.  Defendants were also negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.

47.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no

adequate remedy at law.

## COUNT II

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed

Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

52.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55.     Plaintiff has no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required

in it or necessary to make the statements contained therein not misleading;

      D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

      E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

      F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: December 13, 2021

                                    **MOORE KUEHN, PLLC**

                                    */s/Justin Kuehn*
                                    Justin A. Kuehn
                                    Fletcher W. Moore
                                    30 Wall Street, 8th floor
                                    New York, New York 10005
                                    Tel: (212) 709-8245
                                    jkuehn@moorekuehn.com
                                    fmoore@moorekuehn.com
                                    *Attorneys for Plaintiff*